## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**AFAF H. DOE**
Rue Chahid Bouziane Ahmed
Bouzghaia, Chlef 02021
Algeria

**AISHA DOE**
A-567, Block 7, Gulistan-e-Jauhar
Karachi, Sindh 75290
Pakistan

**AKONDIP B. DOE**
Sandpit
Buea, Southwest 237
Cameroon

**ALBA C.M. DOE**
Calle 17 #38-168, Torre 15, Apt. 302, Anturio 2
Soacha, Cundinamarca 250051004
Colombia

**ANASTASIIA V. DOE**
Ulitsa Khudozhnikov 15K1, Kv. 224
Saint Petersburg 194295
Russia

**ANDREY DOE**
15 Vicksburg Ct
Freehold, NJ 07728

**ANEL DOE**
Popovići 79
Ilijaš 71380
Bosnia and Herzegovina

**ANJELIKA DOE**
Chilanzar Region, Quarter 3, Building 2, Apt 34
Tashkent 100115
Uzbekistan

**BIZUMUREMYI DOE**
Kigali–Kicukiro, Masaka
Kigali City

Civil Action No. 26-cv-1270

**COMPLAINT**

Rwanda

**CRUZ M.T. DOE**
17550 Leighton Circle
Amarillo, TX 79124

**DEVYREL DOE**
Ried Piece District, Thompson Town P.O.
Clarendon
Jamaica

**FABIANO T.R. DOE**
Rua Alcântara, 14, Apt. 303, Nova Granada
Belo Horizonte, Minas Gerais 30431-315
Brazil

**GLORIA B. DOE**
23 Avenue du Marché
Nsele, Kinshasa 243
Democratic Republic of the Congo

**GUILHERME DOE**
5108 Millennium Dr
Willingboro, NJ 08046

**GURGEN DOE**
70 Kentron, Apt. 3
Hrazdan, Kotayk
Armenia

**HAJRA DOE**
Muhallah Baby Da Lahore
Jalalpur Jattan, Punjab 50780
Pakistan

**HENRIQUE C.A. DOE**
Rua Emília Sampaio, 35, Apt. 202
Rio de Janeiro, RJ 20560-100
Brazil

**HIBA DOE**
House No. A-48, Block 14, Gulistan-e-Johar
Karachi, Sindh 75290
Pakistan

**HOSAM O.M. DOE**

Sholhub Street, Building No. 3847, Um Salim District
Riyadh 3847
Egypt

**IULIIA DOE**
Ulitsa Kranostroiteley, 20, Kv. 29
Rzhev, Tverskaya Oblast 172386
Russia

**JAVERIA DOE**
121 Awan Town, Jinnah Block
Lahore, Punjab 54780
Pakistan

**JENNIFER K. DOE**
GT-083 9029, RP40/7, Comm. 10, 28 PAA Grant St
Tema, Accra
Ghana

**JOHANNA C. DOE**
Carrera 14B Sur #93-160, Fortezza 2, Torre E, Apt.
103
Ibagué, Tolima 730001
Colombia

**KSENIIA V. DOE**
75 Rue de Chézy, Bâtiment A
Neuilly-sur-Seine, Île-de-France 92200
France

**LUJAIN DOE**
54 Ahmad Shawqi St
Amman 11181
Jordan

**MARCEL A. DOE**
Sanguinetti District, Sanguinetti P.A.
Clarendon
Jamaica

**MEKEDES W. DOE**
Yeka, Woreda 6, House No. 993/19
Addis Ababa
Ethiopia

**MICHELLE C.C. DOE**

32 Wickham Dr, Golden Acres
Spanish Town, St. Catherine
Jamaica

**MOHAMED A.E. DOE**
3103 Sedgwick Ave
Bronx, NY 10463

**MUHAMMAD F. DOE**
5 Fowkes Way, West Hoxton
Sydney, NSW 2171
Australia

**MUTABAZI J. DOE**
2881 Bynan Dr, Apt. 309
Rutsiro
Ypsilanti, MI 48197
Rwanda

**NASSER E.E. DOE**
27 Mamdouh St
Ezbet El Bakry, Shoubra El Khaima
Cairo 6227101
Egypt

**OSHANE A. DOE**
Westmoreland Negril P.O.
Negril
Jamaica

**OUMAIMA DOE**
526 Briarcliff Avenue
Utica, NY 13502

**PRIYANKA DOE**
104/3 Kumari Mandir Marg, Kupondole
Lalitpur, Bagmati 44600
Nepal

**RATIFA DOE**
13401 Dumas Road, Apt. D302
Mill Creek, WA 98012

**ROBIN J. DOE**
36 Loveday St
Providence, RI 02908

**SELDI DOE**
Via Francesco Mussi 4
Corbetta, Milano 20011
Italy

**SHADLIA DOE**
Rue Alier N1, Zarzouna
Bizerte 7021
Tunisia

**SHAFQAT DOE**
Kasernenhof 4
72074 Tübingen
Baden-Württemberg
Germany

**SHAKHNOZA DOE**
Nukus 37, Floor 3
Tashkent
Uzbekistan

**SOFIIA DOE**
Ulitsa Narodnaya 14, 55
Saint Petersburg 193079
Russia

**SREYCHAN DOE**
Group 41 Maphey Ousaphea
Svay Por Quarter, Battambang
Cambodia

**SYEDA F. DOE**
R460 Block 20 Federal B Area
Karachi, Sindh, 75950
Pakistan

**SYEDA R.Z. DOE**
House # D-110 Wapda Town phase 1
Multan, Punjab 66000
Pakistan

**TEHSEEN U. DOE**
189 Frederick Street
Ashfield, New South Wales 2131
Australia

**TIMUR DOE**
7 Ferenza Munniha Street
Tomsk 634059
Russia

**WALTER A.C. DOE**
Calle 50 #55-01, T2 Apt. 1504
Armenia, Quindio
Colombia

**YASMINE DOE**
89 Zone 02, Hay El Manar
El Jadida 24000
Morocco

  Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF STATE**
2201 C. Street, N.W.,
Washington, DC 20520

**MARCO RUBIO,** *in his official capacity as Secretary of the Department of State*
U.S. Department of State
2201 C. Street, N.W.,
Washington, DC 20520

  Defendants.

## INTRODUCTION

1. This action challenges an unprecedented and unlawful policy adopted by the United States Department of State ("State Department") that forecloses the processing and issuance of immigrant visas for nationals of seventy-five (75) countries worldwide. By imposing a

directive to reject visa applications based solely on nationality, the State Department has effectively nullified congressionally enacted immigration law and denied eligible applicants the opportunity to obtain visas for which they are otherwise qualified.

2. Congress requires that every immigrant visa application be reviewed and adjudicated by a Department of State consular officer. 8 U.S.C. § 1202(b). In performing this function, the Department of State may not discriminate based on "race, sex, nationality, place of birth, or place of residence" in connection with the issuance of immigrant visas. 8 U.S.C. § 1152(a)(1)(A).

3. Consular officers—tasked with reviewing and adjudicating visa applications and determining whether an applicant is inadmissible—operate with a significant degree of discretion. Their on-the-ground judgments are afforded broad latitude. Notably, the Secretary of State's authority is expressly limited, as he "shall not have any authority expressly given to … consular officers." 22 U.S.C. § 2651a(a)(3)(B)(ii).

4. On January 14, 2026, the Secretary of State issued Cable 26 STATE 3740, effectively displacing consular officers' traditional adjudicatory role, including their authority to make on-the-ground factual determinations and render decisions. The directive mandates that "consular officers must refuse under [8 U.S.C. § 1201(g)] … all immigrant visa applicants who have not been refused under another ground of inadmissibility" if the applicant is from one of 75 designated countries, on the basis that such applicants are likely to become public charges and are therefore inadmissible under 8 U.S.C. § 1182(a)(4). *See* **Exhibit A**, Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge, 26 STATE 3740 (January 14, 2026).

5. Forty-nine (49) immigrants bring this action seeking immigrant visas to immigrate to the United States on a permanent basis and to enforce the core principles of the Immigration and Nationality Act ("INA") —family unity and an opportunity to contribute to their communities. For generations, the United States has served as a destination for such individuals. Congress embodied these values into the INA, carefully limiting the circumstances under which intending immigrants may be excluded. Among those limited grounds is the "public charge" provision — but it has never functioned as a broad and categorical bar. As recognized by both Congress and the courts, the term "public charge" requires a case-specific determination that an individual is likely to become wholly or primarily dependent on the government for subsistence, typically evidenced by reliance on cash assistance or long-term, institutional care at public expense. Nevertheless, the State Department has departed from this established framework. Rather than conducting individualized, case-by-case assessments, the State Department now makes public charge determinations based solely on an applicant's nationality, in contravention of Congress's carefully calibrated standards governing visa adjudications.

6. The Department of State has instituted a visa adjudication framework untethered to the INA or its implementing regulations. Specifically, this framework permits the suspension and refusal of visas based solely on an applicant's nationality, without the individualized determinations the law requires. This nationality-based visa ban is not grounded in either law or fact. The State Department has effectively instituted a sweeping, nationality-based bar on lawful immigration for nationals of seventy-five (75) countries, which is premised on the unsupported and incorrect assertion that individuals from these countries are likely to immigrant and to rely on cash welfare and become "public charges."

3

7.  The INA established an individualized immigration framework that safeguards family unity, ensures fair consideration of applicants, and limits the Executive's authority to exclude immigrants based on blanket criteria such as their country of nationality. By effectively halting visa processing for entire countries, the State Department has acted beyond its statutory authority in denying families their statutory and constitutional rights, depriving working individuals of fair and lawful consideration, and replacing Congress's framework with a sweeping, arbitrary, and unlawful policy.

8.  Further, the Administrative Procedure Act ("APA") prohibits agencies from imposing binding rules of general applicability without statutory authorization, without reasoned explanation, and without notice-and-comment rulemaking, as discussed *infra*. Therefore, the challenged policies are substantive rules with immediate legal consequences that were promulgated in violation of the requirements of the APA.

9.  The consequences to the Plaintiffs are profound. By denying immigrant visas from seventy-five (75) countries worldwide, the State Department has delayed or blocked family reunification, disrupted lawful employment opportunities, and caused widespread uncertainty, even for applicants with no history of reliance on public benefits. This policy violates the APA because it is arbitrary, capricious, and contrary to law. Many applicants from affected countries, despite having strong financial stability and no history of reliance on cash welfare, face arbitrary denials or prolonged processing solely due to their nationality. This fundamentally undermines Congress's intent for individualized, fair immigration assessments under the INA.

10. Plaintiffs seek declaratory relief and an order vacating the U.S. Department of State's directive to summarily deny immigrant visa applications for applicants from 75-countries,

4

along with any related implementing actions. Plaintiffs further request a permanent injunction barring Defendants from enforcing or relying on these policies and requiring the restoration of lawful, individualized, and timely adjudication of all visa applications in accordance with statutory and constitutional limits on agency action

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the United States Constitution, the INA, and the APA.

12. Judicial review is available under the APA, 5 U.S.C. §§ 702 and 704, because Plaintiffs challenge final agency actions that impose binding consequences on them, suspend DHS's statutory adjudication duties, and inflict concrete injuries.  Sovereign immunity is waived for claims seeking non-monetary relief.  5 U.S.C. § 702.

13. The State Department's memoranda "*Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance*" prohibits the adjudication of all immigrant visas from seventy-five countries, and therefore constitutes final agency action. Taken together, the memoranda and policies prevent USCIS adjudicators from adjudicating the applications before them and impose direct and immediate legal consequences for Plaintiffs.

14. The relief sought is authorized under 5 U.S.C. § 706, which empowers courts to set aside agency actions that exceed statutory authority, conflict with governing law, or violate procedural requirements: "to the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms as an agency

action. The reviewing court shall . . . hold unlawful and set aside agency action, findings and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations or short of statutory right; (D) without observance of procedure required by law; …".

15.    8 U.S.C. § 2201(a) provides, in pertinent part, that "any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration" and that "declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 8 U.S.C. § 2202 authorizes a court to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree . . . after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

16.    The APA empowers a reviewing court "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury" "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. §705.

17.    Venue is proper in the District of Columbia pursuant under 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States sued in their official capacities and reside in this District. Defendants United States Department of State and Marco Rubio, Secretary of State, U.S. Department of State, maintain their principal offices in the District of Columbia and perform their official duties there.

18. Plaintiffs have standing. Defendants' actions in refusing to adjudicate and issue visas has caused and continues to cause Plaintiffs a concrete and particularized injury by preventing the adjudication of qualified visa applications based on qualified family or employment relationships. Defendants' unlawful policy to withhold a final adjudication on bona fide applications because of where they are born has caused family separation, lost employment opportunities, and has otherwise prevented the immigration of Plaintiffs to the United States after they have met the rules and waited for an adjudication in accordance with law. The requested relief will redress these injuries by allowing these individuals to obtain an adjudication of the visa applications for which they are otherwise eligible.

## PARTIES

### I.   Plaintiffs

19. **Plaintiff Afaf Doe**, a citizen of Algeria residing outside the United States and the principal applicant in a family-based immigrant visa petition.

20. **Plaintiff Aisha Doe**, a citizen of Pakistan residing outside the United States and the principal applicant in a family-based immigrant visa petition.

21. **Plaintiff Akondip Doe**, a citizen of Cameroon residing outside the United States and a beneficiary of a family-based immigrant visa petition.

22. **Plaintiff Alba Doe,** a citizen of Colombia and the principal applicant for a family-based immigrant visa petition.

23. **Plaintiff Anastasiia Doe** is a national of Russia who remains outside the United States while her family-based immigrant visa – filed by her U.S. citizen husband – remains unresolved.

7

24.    **Plaintiff Andrey Doe**, is a citizen of Russia and the principal applicant for a family-based immigrant visa stemming from the petition filed by his spouse.

25.    **Plaintiff Anel Doe** is a citizen of Bosnia and Herzegovina and the principal applicant in a family-based immigrant visa petition.

26.    **Plaintiff Anjelika Kornienko** is a citizen of Uzbekistan and the principal applicant in a family-based immigrant visa petition filed by her spouse.

27.    **Plaintiff Bizumuremyi Doe**, a citizen of Rwanda and the principal applicant in a family-based immigrant visa petition.

28.    **Plaintiff Cruz Doe** is a citizen of Guatemala and the principal applicant in a family-based immigrant visa petition.

29.    **Plaintiff Devyrel Doe**, a citizen of Jamaica and the principal applicant in a family-based immigrant visa petition filed by his parent.

30.    **Plaintiff Fabiano Doe**, a 75-year-old citizen of Brazil and the principal applicant in a family-based immigrant visa for the petition filed by his daughter.

31.    **Plaintiff Guilherme Doe**, a citizen of Brazil and the beneficiary of a family-based immigrant visa petition, has been waiting in the immigration queue for more than 6 years.

32.    **Plaintiff Gurgen Doe**, a citizen of Armenia and the principal applicant in a family-based immigrant visa petition.

33.    **Plaintiff Henrique Doe**, a citizen of Brazil and the principal applicant in a family-based immigrant visa petition.

34. **Plaintiff Hiba Arman**, a citizen of Pakistan and the principal applicant in a family-based immigrant visa petition.

35. **Plaintiff Hosam Doe**, a citizen of Egypt and the principal applicant in an employment-based immigrant visa case based on an approved EB-2 National Interest Waiver.

36. **Plaintiff Iuliia Milchenko**, a citizen of Russia and the principal applicant in a family-based immigrant visa petition.

37. **Plaintiff Javeria Doe**, a citizen of Pakistan and the principal applicant in a family-based immigrant visa petition.

38. **Plaintiff Jennifer Doe** is a citizen of Ghana and the principal applicant in a family-based immigrant visa petition.

39. **Plaintiff Johanna C. Doe**, a citizen of Colombia and the principal applicant in a family-based immigrant visa petition.

40. **Plaintiff Kseniia V. Doe**, a citizen of Russia and the principal applicant in a family-based immigrant visa petition.

41. **Plaintiff Lujain Doe** is a national of Jordan and the principal applicant in a family-based immigrant visa case filed by her spouse.

42. **Plaintiff Marcel Doe** is a national of Jamaica and the principal applicant in a family-based immigrant visa case filed by his spouse.

43. **Plaintiff Mekedes Doe** is a national of Ethiopia and the principal applicant in a family-based immigrant visa case filed by her spouse.

44. **Plaintiff Michelle Doe** is a national of Jamaica and the principal applicant in a family-based immigrant visa case filed by her parent.

45. **Plaintiff Mohamed Doe**, a citizen of Egypt and the principal applicant in an employment-based immigrant visa case.

46. **Plaintiff Muhammad Doe** is a national of Pakistan and the principal applicant in a family-based immigrant visa case filed by his spouse.

47. **Plaintiff Mutabazi J Doe** is a national of Rwanda and the principal applicant in a family-based immigrant visa case filed by his spouse.

48. **Plaintiff Nasser Doe** is a national of Egypt and the principal applicant in a family-based immigrant visa case filed by his spouse.

49. **Plaintiff Oshane Doe** is a national of Jamaica and the principal applicant in a family-based immigrant visa case filed by his spouse.

50. **Plaintiff Oumaima Doe** is a citizen of Morocco and the principal applicant in an immigrant visa case.

51. **Plaintiff Priyanka K. Doe** is a national of Nepal and the principal applicant in a family-based visa case.

52. **Plaintiff Ratifa Doe** is a national of Rwanda and the principal applicant in a family-based immigrant visa case filed by her spouse.

53. **Plaintiff Robin Doe** is a national of Guatemala and the principal applicant in a family-based immigrant visa case filed by his spouse.

54.     **Plaintiff Seldi Doe** is a national of Albania and the principal applicant in a family-based immigrant visa case filed by his spouse.

55.     **Plaintiff Shadlia Doe** is a national of Tunisia and the principal applicant in a family-based immigrant visa case filed by her spouse.

56.     **Plaintiff Shafqat Doe** is a national of Pakistan and the principal applicant in a family-based immigrant visa case filed by his spouse.

57.     **Plaintiff Shakhnoza Doe** is a national of Uzbekistan and the principal applicant in a family-based immigrant visa case filed by her spouse.

58.     **Plaintiff Sofiia Doe** is a national of Russia and the principal applicant in a family-based immigrant visa case filed by her spouse. Her case became documentarily qualified, she attended her immigrant visa interview in Belgrade, Serbia, in February 2026, and her visa was refused under 8 U.S.C. § 1201(g).

59.     **Plaintiff Sreychan Doe** is a national of Cambodia and the principal applicant in a family-based immigrant visa case filed by her spouse. Her case became documentarily qualified, she attended her immigrant visa interview in February 2026, and she was then placed in 8 U.S.C. § 1201(g) administrative processing.

60.     **Plaintiff Syeda F. Doe** is a national of Pakistan and the principal applicant in a family-based immigrant visa case filed by her spouse.

61.     **Plaintiff Syeda R.Z. Doe** a citizen of Pakistan currently residing outside of the United States and a beneficiary of a family-based immigrant visa petition.

62.    **Plaintiff Tehseen Doe** is a national of Pakistan and the principal applicant in a family-based immigrant visa case filed by his spouse.

63.    **Plaintiff Timur Doe** is a 19-year-old national of Russia and the principal applicant in a family-based immigrant visa case filed by his parent.

64.    **Plaintiff Walter Doe** is a national of Colombia and the principal applicant in a family-based immigrant visa case filed by his spouse.

65.    **Plaintiff Yasmine Doe** is a national of Morocco and the principal applicant in a family-based immigrant visa case filed by her U.S. citizen spouse. Her case became documentarily qualified, she attended her immigrant visa interview in February 2026, and her visa was refused pursuant to U.S.C. § 1201(g).

## II.    Defendants

66.    **United States Department of State** is a sub-agency of DHS, with headquarters located at 2201 C Street, NW, Washington, D.C. 20520.

67.    **Marco Rubio**, Secretary of State, U.S. Department of State and has responsibility for overseeing enforcement and implementation of the Immigrant Visa Ban all the State Department's staff. He is sued in his official capacity.

### STATUTORY AND REGULATORY FRAMEWORK OF THE INA

68.    The Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1101 et seq., establishes a comprehensive statutory scheme governing the admission of noncitizens into the United States, including the issuance of immigrant visas.

69. The authority to adjudicate and issue immigrant visas is vested in consular officers of the United States, acting under the supervision of the Secretary of State. *See* 8 U.S.C. §§ 1104(a), 1201(a).

70. In most cases, the immigrant visa process begins with the filing of an immigrant visa petition with U.S. Citizenship & Immigration Services ("USCIS"), a component of the Department of Homeland Security. See 8 U.S.C. § 1154. A petition is typically filed by a qualifying petitioner, such as a U.S. citizen family member or an employer, seeking classification of the beneficiary under a statutory immigrant visa category. Id. However, there are additional pathways in the immigrant visa process that do not require a petition, such as the diversity visa program or certain employment-based categories. See 8 U.S.C. §§ 1153(b), (c).

71. Once the petition is approved (if a petition is necessary) and an immigrant visa number becomes available under the applicable statutory quota system, the case comes under the jurisdiction of the Department of State for consular processing. 8 U.S.C. §§ 1151 – 1153. Applicants outside the U.S. must apply for an immigrant visa at a U.S. embassy or consulate abroad by submitting a visa application (DS-260 Immigrant Visa Electronic Application), supporting documentation, and applicable fees. 8 U.S.C. § 1202.

72. Immigrant visa applicants are required to appear for an in-person interview with a consular officer at the U.S. embassy or consulate where the application is being processed. During the interview, the consular officer reviews the applicant's eligibility for the visa and determines whether the applicant is inadmissible under any provision of the INA. 22 C.F.R. § 42.62; 8 U.S.C. § 1201(g).

13

73.    Although consular officers retain discretion to grant or deny individual visa applications, that discretion must be exercised on a case-by-case basis and in accordance with the statutory grounds of inadmissibility set forth in 8 U.S.C. § 1182(a). Inadmissibility refers to whether a prospective immigrant faces a statutory bar to being admitted into the U.S. Examples include whether a prospective immigrant has committed a specified crime, has communicable diseases of public health significance, or, as discussed in detail below, is likely to become a "public charge" reliant on government assistance. 8 U.S.C. § 1182(a).

74.    In applying the public charge ground, Congress has required a forward-looking, individualized determination, considering the applicant's: (I) age, (II) health; (III) family status; (IV) assets, resources, and financial status; and (V) education; and skills." 8 U.S.C. § 1182(a)(4)(B)(i). An adjudicator may also consider an "affidavit of support" that meets the requirements under 8 U.S.C. § 1183a. For many applicants, this affidavit of support is required. 8 U.S.C. § 1182(a)(4)(C)-(E).

75.    The DOS Foreign Affairs Manual ("FAM") provides consular officers with detailed guidance on how to determine if a particular applicant is likely to become a public charge: When determining ineligibility under INA 212(a)(4), the term "public charge" means that an individual, after admission into the United States, is likely to become primarily dependent on the U.S. Government for subsistence. This means either: receipt of public cash assistance for income maintenance (see paragraph b below); or Institutionalization for long term care at U.S. Government expense (see paragraph d below). 9 FAM 302.8-2(B)(1).

76.    Moreover, the FAM establishes significant guardrails that guide and constrain consular officers in making determinations of inadmissibility under the public charge ground: "a. Determining Likelihood of Ineligibility:

14

(1) INA 212(a)(4) applies to all individuals seeking entry into the United States, with a few exceptions. . . . You may not refuse a visa based on "what if" possibilities (e.g., "what if the applicant loses the job before reaching the intended destination," or "what if the applicant is faced with a medical emergency."). Instead, assess only the "totality of the circumstances" existing when the visa application is submitted. . . . You must be able to point to circumstances which make it not merely possible, but likely, that the applicant will become a public charge." 9 FAM 302.8-2(B)(2)(a)(1).

77.    The FAM is clear: "No single factor, other than the lack of a qualifying affidavit of support, in accordance with INA 213A [8 U.S.C. § 1183a], if required, will determine whether an individual is a public charge." 9 FAM 302.8-2(B)(1)(a)(3).

78.    The INA does not authorize the State Department to impose categorical, nationality-based suspensions of immigrant visa issuance outside the framework established by Congress.

79.    Neither the INA nor its implementing regulations authorize the State Department to place otherwise eligible applications into indefinite suspension or administrative limbo based solely on nationality.

## FACTUAL BACKGROUND

80.    On January 14, 2026, the State Department announced a sweeping policy to indefinitely pause the issuance of immigrant visas for nationals of approximately seventy-five designated countries, with the policy taking effect on January 21, 2026. **Exhibit A**, *Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance*.

15

81. The State Department instituted a blanket prohibition on immigrant visa issuance to nationals of these seventy-five (75) designated countries: Afghanistan, Albania, Algeria, Antigua and Barbuda, Armenia, Azerbaijan, Bahamas, Bangladesh, Barbados, Belarus, Belize, Bhutan, Bosnia and Herzegovina, Brazil, Cambodia, Cameroon, Cape Verde, Colombia, Democratic Republic of the Congo, Cuba, Dominica, Egypt, Eritrea, Ethiopia, Fiji, Gambia, Georgia, Ghana, Grenada, Guatemala, Guinea, Haiti, Iran, Iraq, Cote d'Ivoire, Jamaica, Jordan, Kazakhstan, Kosovo, Kuwait, Kyrgyzstan, Laos, Lebanon, Liberia, Libya, Moldova, Mongolia, Montenegro, Morocco, Burma, Nepal, Nicaragua, Nigeria, Macedonia, Pakistan, Republic of the Congo, Russia, Rwanda, Saint Kitts and Nevis, Saint Lucia, Saint Vincent and the Grenadines, Senegal, Sierra Leone, Somalia, South Sudan, Sudan, Syria, Tanzania, Thailand, Togo, Tunisia, Uganda, Uruguay, Uzbekistan and Yemen. *Id.*

82. The policy applies to immigrant visas processed at U.S. consulates abroad, including family-based, employment-based, and diversity visas, while nonimmigrant visas (*e.g.*, tourist, student, temporary worker visas) remain unaffected.

83. The State Department justified the pause as part of a review of "public charge" screening policies, asserting that certain foreign nationals from the listed countries pose a higher risk of relying on U.S. public benefits. Family-based applicants seeking lawful permanent resident status—whether through adjustment of status within the United States or consular processing abroad—must establish that none of the inadmissibility grounds set forth in Section 212(a) of the Immigration and Nationality Act apply. *See* 8 U.S.C. § 1182(a)(1)–(10). These grounds include, among others, health-related conditions, unlawful presence, criminal history, and national security concerns. One such ground, discussed further below,

16

is whether the applicant is likely to become a public charge. The public charge ground of inadmissibility is set forth in 8 U.S.C. § 1182(a)(4), which provides that a noncitizen applicant who, "in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General at the time of application for admission or adjustment of status, is likely at any time to become a public charge is inadmissible." *Id.* § 1182(a)(4)(A).

84. Congress has never authorized categorical exclusions, wealth-based thresholds, or nationality-based presumptions in assessing public charge inadmissibility. On the contrary, the statute requires an individualized determination. Immigration officials must evaluate the totality of each applicant's circumstances on a case-by-case basis. Specifically, adjudicators are tasked with considering the factors expressly identified in the Immigration and Nationality Act: (1) age; (2) health; (3) family status; (4) assets, resources, and financial status; and (5) education and skills. *See* 8 U.S.C. § 1182(a)(4)(B)(i); *see also* 8 C.F.R. § 212.22; 22 C.F.R. § 40.41.

85. Pursuant to internal directives and consular guidance, U.S. embassies and consulates were instructed to stop issuing immigrant visas to affected applicants, even where applicants had already completed interviews or were otherwise eligible for approval. Instead, applications were placed into indefinite administrative processing without final adjudication.

86. The State Department's policy operates as an indefinite suspension and creates a presumption of ineligibility for applicants from the listed countries, with no timeline for resumption of visa issuance.

## CLAIMS FOR RELIEF

### COUNT 1 – ULTRA VIRES EXECUTIVE ACTION

87.    Plaintiffs incorporate and reallege each of the foregoing paragraphs.

88.    Defendants have implemented and are enforcing a policy categorically denying the issuance of immigrant visas to nationals of approximately 75 countries.

89.    This policy exceeds Defendants' statutory authority and is therefore ultra vires.

90.    Under the INA, Congress established a comprehensive framework governing the issuance of immigrant visas and the admissibility of noncitizens. That framework requires individualized determinations based on specific statutory criteria.

91.    Although 8 U.S.C. § 1182(f) grants the President limited authority to suspend the entry of certain noncitizens, it does not authorize sweeping, categorical bans on immigrant visa issuance divorced from individualized findings or the statutory scheme enacted by Congress.

92.    Nor does the INA authorize Defendants, including the U.S. Department of State, to impose blanket suspensions of visa processing based solely on nationality.

93.    To the contrary, Congress expressly prohibited discrimination in the issuance of immigrant visas on the basis of nationality. *See* 8 U.S.C. § 1152(a)(1)(A).

94.    By imposing a categorical bar on immigrant visas for nationals of designated countries, Defendants have contravened clear statutory limits and substituted their own policy preferences for the framework mandated by Congress.

18

95.   The challenged policy is not tethered to any individualized determination of inadmissibility and instead operates as a blanket prohibition.

96.   Because Defendants have acted outside the scope of their statutory authority, their actions are unlawful and must be set aside.

97.   Plaintiffs have suffered and will continue to suffer concrete and particularized injuries as a direct result of Defendants' ultra vires conduct, including but not limited to family separation, denial of immigration benefits, and associated economic and emotional harms.

**COUNT II – APA VIOLATION**
**CONTRARY TO LAW (5 U.S.C. § 706(2)(A), (C))**

98.   Plaintiffs incorporate and reallege the preceding paragraphs.

99.   The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, authorizes courts to set aside agency action that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C).

100.   The Visa Ban constitutes final agency action because it represents the consummation of Defendants' decision-making process and determines rights and obligations of immigrant visa applicants, including Plaintiffs.

101.   The challenged policy is contrary to law because it violates clear statutory provisions of the Immigration and Nationality Act ("INA"), including: a. The prohibition on nationality-based discrimination in immigrant visa issuance. See 8 U.S.C. § 1152(a)(1)(A); b. The requirement that public charge determinations be individualized and consider the totality of circumstances. See 8 U.S.C. § 1182(a)(4)(B); and c. The statutory framework established by Congress governing immigrant visa issuance, which vests decision-making

19

authority in consular officers and restricts the scope of executive discretion. See 8 U.S.C. §§ 1101–1184.

102. By imposing a categorical suspension of immigrant visas for nationals of approximately 75 countries, Defendants have acted beyond the authority delegated by Congress and in a manner inconsistent with the statutory scheme.

103. Defendants' action thus constitutes agency action that is "not in accordance with law" and "in excess of statutory authority" under 5 U.S.C. § 706(2)(A), (C).

104. Plaintiff(s) have suffered concrete and particularized injuries as a result of the Visa Ban, including denial or delay of immigrant visa processing, prolonged separation from family members, and related economic and emotional harms.

105. Plaintiff(s) have no adequate remedy at law and are entitled to judicial review under U.S.C. § 702.

## COUNT III- APA VIOLATION

## ARBITRARY AND CAPRICIOUS (5 U.S.C. § 706(2)(A))

106. Plaintiffs incorporate and reallege the preceding paragraphs.

107. The State Department's policy fails to provide a reasoned explanation for imposing a sweeping, nationality-based categorical rejection of visa applications on the "public charge" ground.

108. The State Department's policy relies on factors which Congress did not intend it to consider.

109. Defendants failed to consider reliance interests, statutory mandates, or less restrictive alternatives such as individualized background checks.

20

110. By failing to consider the totality of circumstances and statutory requirements for immigrant visa issuance, including individualized assessment of public charge risk and other admissibility factors, Defendants acted in an arbitrary and capricious manner

## COUNT IV – APA VIOLATION:
## NOTICE AND COMMENT (5 U.S.C. § 553)

111. Plaintiffs incorporate and reallege the preceding paragraphs.

112. The APA, at 5 U.S.C. § 553, requires that federal agencies engage in notice-and-comment rulemaking before issuing substantive rules that affect the rights or obligations of individuals, unless an exception applies.

113. The State Department's policy imposes a categorical suspension of immigrant visas for nationals of approximately 75 countries, alters the legal rights of affected applicants, and affects the processes through which visas are issued.

114. Defendants implemented and continue to enforce the Visa Ban without: 1. publishing a notice of proposed rulemaking in the Federal Register; 2. providing interested parties an opportunity to comment on the proposed rule; or 3. considering the comments of interested parties before finalizing the policy.

115. By failing to engage in required notice-and-comment procedures, Defendants have acted in violation of 5 U.S.C. § 553 and deprived Plaintiffs and other affected individuals of procedural protections guaranteed by the APA.

116. By adopting substantive rules without the requisite notice-and-comment, Defendants violated 5 U.S.C. § 553 and § 706(2)(D).

21

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.      Declare that the State Department's policy announced by Defendants exceeds the authority granted by the INA, and is therefore unlawful;

2.      Declare that the State Department's policy violated the APA, including 5 U.S.C. § 553 procedural requirements, and 5 U.S.C. § 706 substantive constraints;

3.      Vacate and set aside Defendants' "public charge" policy announced on January 14, 2026, effective January 21, 2026 (as described in Exhibit A);

4.      Permanently enjoin Defendants from enforcing the "public charge" mandatory denial policy based solely on country of nationality;

5.      Issue a declaratory judgment stating that the immigrant visa pause is unauthorized and contrary to the Constitution and laws of the United States;

6.      Order Defendants to resume case by case adjudications, processing approvals and issuance for immigrant visas consistent with 8 U.S.C. § 1182(a)(4), the definition of "public charge" in the current 9 FAM 302.8-2 and the INA's individualized framework and complete visa processing, approvals, and issuance in accordance with statutory law;

7.      Award Plaintiffs their reasonable attorneys' fees and costs; and

8.      Grant such other and further relief as the Court deems just and proper.


Dated: April 15, 2026

/s/ *Jessica A. Dawgert*
JESSICA A. DAWGERT, DC Bar 985790
Ariela Lake Law & Consulting, PLLC
3355 Hudson St. #7098
Denver, CO 80207
303-535-2203
jess@allc.law


*/s/ Dana M. Camilleri*
Virginia Bar 76568
McBean Law, PLLC
235 Mamaroneck Ave, Suite 202
White Plains, NY 10605
914-898-9488
D.Camilleri@mcbeanlaw.com
*Motion for Pro Hac Vice Forthcoming*


*s/ LaToya N. McBean Pompy*
LaToya N. McBean Pompy
NY Bar 6153985
McBean Law, PLLC
235 Mamaroneck Avenue, Suite 202
White Plains, NY 10605
914-898-9488
L.Pompy@mcbeanlaw.com
*Motion for Pro Hac Vice Forthcoming*

23