UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **AFAF H. DOE,** *et al.*,<br><br>**Plaintiffs.**<br><br>v.<br><br>**U.S. DEPARTMENT OF STATE,** *et al.*,<br><br>**Defendants.** | **Civil Action No. 26-1270** |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are 49 U.S. visa applicants.  See ECF No. 1 (Compl.), ¶ 5.  Their applications were suspended under a January 2026 State Department policy that indefinitely pauses visa issuances for nationals of 75 countries.  Id., ¶¶ 1, 80–81.  The Department presents the policy as part of an ongoing review of visa-vetting procedures, asserting that nationals of the designated countries "are at a high risk for becoming a public charge," ECF No. 1-1 (State Dep't Cable) at 3, and are therefore inadmissible under 8 U.S.C § 1182(a)(4).  Compl., ¶ 4.  Plaintiffs contend that this policy violates the Immigration and Nationality Act by authorizing categorical visa denials based solely on applicant nationality.  Id., ¶¶ 5–7, 9, 78–79, 84.

They seek adjudication of their individual applications, id. at 22; ECF No. 9 (Rev. Mot.) at ECF p. 6, as well as declarations that the policy is *ultra vires* and violates the Administrative Procedure Act, vacatur of the policy, and an injunction barring its enforcement.  See Compl. at 22.  Plaintiffs concurrently filed a Motion to Proceed Under Pseudonym.  See ECF No. 7 (Mot.); ECF No. 7-1 (Mem.).  This Court denied that Motion without prejudice for insufficient evidentiary support.  See Minute Order of 4/16/2026.  Plaintiffs now renew their request.  See

Rev. Mot. at ECF p. 1.  One Plaintiff establishes sufficient grounds for pseudonymity; the others do not.  The Court will therefore grant the Motion in part and deny it in part.

## I.    Legal Standard

Generally, plaintiffs filing a civil action must identify the parties and file on the public docket.  See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1).  This identification requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings."  In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)).  A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name."  In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020).  As a result, the court must "'balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure'" by applying a "flexible and fact driven" balancing test.  Id. (quoting In re Sealed Case, 931 F.3d at 96).  That test assesses "five non-exhaustive factors":

    (1)  whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;

    (2)  whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;

    (3)  the ages of the persons whose privacy interests are sought to be protected;

    (4)  whether the action is against a governmental or private party; and relatedly,

    (5)  the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (quoting In re Sealed Case, 931 F.3d at 97) (first alteration in original).

**II.    Analysis**

At this stage, one Plaintiff has succeeded in demonstrating that her privacy and safety interests outweigh the public's presumptive and substantial interest in learning her identity.  The remaining Plaintiffs fall short.

Jamaican Plaintiff Michelle Doe ("M. Doe") states that disclosure could enable her physically abusive ex-spouse to locate her and her children.  See ECF No. 9-1 (Client Quest.) at 6; Rev. Mot. at ECF p. 3; Compl., ¶ 44.  Plaintiff Anastasiia Doe ("A. Doe"), a Russian national residing in Russia, alleges a risk of retaliation stemming from her documented U.S. ties.  See Client Quest. at 2; Rev. Mot. at ECF p. 3.  The remaining Plaintiffs, who hail from various countries, generally invoke emotional, reputational, employment, and pecuniary risks.  See Client Quest. at 1, 3–5, 7–12.

    A.  Factor 1

The first factor favors pseudonymity for M. Doe and A. Doe, but not for the other Plaintiffs.  This Court has credited concrete safety threats as concerns that exceed "the annoyance and criticism that may attend litigation" and implicate "matter[s] of [a] sensitive and personal nature."  Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023) (quoting In re Sealed Case, 971 F.3d at 326) (finding first factor supported where "[p]laintiff identifie[d] many threats he . . . already received"); see, e.g., R.A. v. Islamic Republic of Iran, No. 23-2606, ECF No. 4 (Mem. Op.) at 3 (D.D.C. Sept. 12, 2023) (descriptions of "severe violence and threats" favor pseudonymity).  Here, M. Doe alleges that her ex-spouse has a history of physical violence and "will use any information . . . to try to track [her] down."  Client Quest. at 6.  Her family thus does not publicly release "anything personal about [them]selves." Id.  Because M. Doe has plausibly alleged a risk of physical harm to herself and her children, the

first factor favors her pseudonymity.  To be sure, she does not attach an affidavit supporting her claims.  Sponsor, 2023 WL 2598685, at *2 (referencing affidavits in support of motion).  "Discovery may [therefore] render [her] concerns unsupported and unwarranted."  Doe v. Federal Republic of Germany, 680 F. Supp. 3d 1, 5 (D.D.C. 2023).  At this early stage, however, the Court finds the claims sufficient to establish that disclosure would pose a risk of harm.

A. Doe presents a closer call.  As a Russian national residing in Russia, Client Quest. at 2, she fears that disclosure could expose her to "adverse consequences," Rev. Mot. at ECF p. 3, since "Russians with documented U.S. family ties are routinely targeted."  Client Quest. at 2.  Her claims are thinly supported.  Id. at 2 (citing "risks" without specificity).  Still, this Court has recognized the sensitivity of disclosing information that could expose foreign nationals to retaliation in their home countries.  See, e.g., Chang v. Republic of South Sudan, 548 F. Supp. 3d 34, 38 (D.D.C. 2021); cf Asylumworks v. Wolf, 2020 WL 13460835, at *3 (D.D.C. Dec. 23, 2020) (crediting "risk of retaliatory harm," albeit in analysis of second factor).  Given her residence and alleged vulnerability in Russia, factor one slightly favors pseudonymity for A. Doe.

The remaining Plaintiffs assert emotional, reputational, professional, pecuniary, and broad safety harms.  See Client Quest. at 1, 3–5, 7–12.  Their contentions are generally attenuated and prospective.  See, e.g., id. at 1 (asserting that disclosure would induce "emotional distress" or cause their family to be "targeted due to their race, ethnicity, and assumptions [by others]"); id. at 3 (maintaining risks of "unwanted scrutiny," "financial harassment," and "scams, extortion, or social/political suspicion" that attend U.S. immigration ties in Plaintiff's home country); id. at 8 (asserting risks of "harm, harassment, or retaliation," including "social scrutiny, jealousy, or targeting for financial exploitation" if Plaintiff were "identif[ied] as someone with

4

active U.S. immigration involvement); id. at 9 (similar).  Most are framed as harms that "could" be triggered by disclosure, rather than consequences established with any degree of certainty.  Id. at 3–5, 7–12.  Indeed, several Plaintiffs characterize their interests as "preventative" or expressly disclaim prior threats or harassment.  Id. at 9–12.

While these risks are no doubt concerning for Plaintiffs, they are insufficient to support the first factor.  This Court has held that "speculative and unsubstantiated claims of harm to [plaintiffs'] reputational or economic interests are insufficient to justify proceeding anonymously."  John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau, 195 F. Supp. 3d 9, 22 (D.D.C. 2016) (quotation marks omitted); see also Bird v. Barr, 2019 WL 2870234, at *5 (D.D.C. July 3, 2019) (rejecting one plaintiff's claims for being "too speculative" compared to another plaintiff's evidence of "prior experience").  Where this Court has found the first factor to support pseudonymity, plaintiffs have alleged particularized threats, specific instances of violence, or documented retaliation.  See, e.g., Molina v. U.S. Dep't of Homeland Sec., No. 25-3417, ECF No. 13 (Mem. Op.) at 1, 3 (D.D.C. Oct. 1, 2025) (crediting fears of "physical harm and harassment" where plaintiffs had previously been arrested and had invoked "high-profile immigration cases where other litigants . . . faced similar abuse"); Doe v. Blinken, No. 23-2997, ECF No. 3 (Mem. Op.) at 3 (D.D.C. Oct. 13, 2023) (citing news coverage of Taliban murdering "Afghan nationals like [p]laintiff" and threats that plaintiff "already received") (emphasis added); Islamic Republic of Iran, No. 23-2606, Mem. Op. at 3 (detailing "severe violence and threats . . . [plaintiffs] . . . already faced," such as being 'taken hostage' and 'subjected to various forms of torture'").  Here, by contrast, Plaintiffs assert predictive concerns with thin evidence.

Plaintiffs' employment-related allegations fail for the same reason.  See Client Quest. at 2 ("Public identification would expose my spouse's . . . employment . . . ."); id. at 5 ("[Disclosure]

could negatively affect my family's employment . . . ."); id. at 9 ("[Disclosure] could lead to misunderstanding, judgment, or reputational harm among colleagues [and] future employers . . . ."). Alleged employment ramifications may support pseudonymity when buttressed by sufficient evidence. Doe v. Lieberman, 2020 WL 13260569, at *3 (D.D.C. Aug. 5, 2020). But conclusory assertions do not suffice. Contrast Bird, 2019 WL 2870234, at *5 (giving weight to plaintiffs' declarations detailing how disclosure could jeopardize their careers), and Doe v. Benoit, 2019 WL 13079193, at *4 (D.D.C. Apr. 30, 2019) (finding pseudonymity "justified" where plaintiff adduced "sufficient detail" regarding potential professional harms), with Thomas v. Power, No. 23-2637, ECF No. 4 (Mem. Op.) at 3 (D.D.C. Sept. 14, 2023) (finding first factor unsatisfied where plaintiff "neither describe[d] nor substantiate[d] how disclosing her identity would in fact harm her professional prospects or reputation").

To be sure, "courts have varied in how much detail they require" for the first factor. John Doe Corp. v. Pub. Co. Acct. Oversight Bd., 2025 WL 304795, at *2 (D.D.C. Jan. 27, 2025). "[A]t one end of the spectrum are completely conclusory allegations, which must be rejected. . . . At the other end are detailed declarations supported by the prior experiences of the plaintiffs or others." Id. Here, Plaintiffs' allegations fall on the conclusory end of the spectrum and thus do not clear the hurdle.

B. Factors 2-5

Factor two tracks the first factor but focuses narrowly on physical and mental harms. In re Sealed Case, 971 F.3d at 326 (supporting pseudonymity where either plaintiff or "innocent non-parties" would face "risk of retaliatory physical or mental harm") (quoted source omitted). M. Doe alleges a demonstrable threat of physical harm to herself and her children. See Client Quest. at 6. This satisfies the second factor. The remaining Plaintiffs do not allege physical

6

harm.  Id. at 8, 10 (disclaiming physical harm); id. at 1–5, 7, 9, 11–12 (omitting reference to physical harm or generally alleging safety risks).  Turning to mental harm, many Plaintiffs allege potential emotional consequences, stress, or anxiety that would result from proceeding under their true names.  Id. at 1, 3–4, 7–12.  But these claims lack detail and evidence.  This Court has previously found mental harm sufficient to support pseudonymity where plaintiffs demonstrated concrete psychological effects directly linked to disclosure.  See, e.g., Emp. #1 v. Dep't of Behav. Health, 694 F. Supp. 3d 110, 115 (D.D.C. 2023) ("Plaintiff explains that he has already faced 'cyber-bullying,'" and its attendant mental harm because defendants had "publish[ed] a report" tying plaintiff to crime); Doe v. Cabrera, 307 F.R.D. 1, 6 (D.D.C. 2014) ("Were the Court to force the plaintiff to reveal her identity, [it] would risk undermining the psychological treatment [she] has already undergone" following alleged harm by defendant).  Plaintiffs offer no such evidence here.  See, e.g., Client Quest. at 4 ("[Disclosure] would . . . create anxiety and emotional distress for my family.").  The second factor thus fails for all but M. Doe.

The third factor cuts in the other direction.  Pseudonymity is favored where disclosure could implicate the privacy interests or safety of minors.  Blinken, No. 23-2997, Mem. Op. at 4.  Several Plaintiffs specifically reference minor children whose privacy interests could be implicated by disclosure.  See Client Quest. at 1, 5, 10.  M. Doe has children, though the record does not expressly indicate whether they are minors, and another Plaintiff has "nieces and nephews" in his home country.  Id. at 3, 6.  If they are minors, this too supports the third factor.

The fourth factor, however, disfavors pseudonymity for all Plaintiffs.  "[T]here is a heightened public interest when an individual or entity files a suit against the government[,]" particularly in a manner that may "alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward."  In re Sealed Case, 971

F.3d at 329.  Although Plaintiffs "seek consular adjudication of their individual visa applications," Rev. Mot. at ECF p. 6, they also pursue programmatic relief.  See Compl. at 22. They specifically request declarations "that the State Department's policy . . . exceeds the authority granted by the INA . . . [and] violate[s] the APA"; vacatur of the policy; a permanent injunction barring enforcement of the policy; and "a declaratory judgment stating that the immigrant visa pause is unauthorized and contrary to the Constitution and laws of the United States."  Id.  This case therefore implicates a "heightened public interest," the touchstone of factor four.  Sponsor, 2023 WL 2598685, at *2 (quotation marks omitted); see also Alpha v. Mayorkas, No. 23-1438, ECF No. 3 (Mem. Op.) at 4 (D.D.C. May 23, 2023).

The fifth and final factor moves the needle toward nondisclosure.  A plaintiff volunteering to disclose her identity mitigates much of the potential "risk of unfairness" to the defendant.  Islamic Republic of Iran, No. 23-2606, Mem. Op. at 5 (concluding that plaintiffs' offer to "disclose [their identities] under seal" satisfied fifth factor) (quotation marks omitted). Here, "Plaintiffs are willing to disclose their identities . . . to Defendants and the Court under seal . . . ."  Rev. Mot. at ECF p. 7.

In sum, a majority of the five factors support pseudonymity for M. Doe, and the Court finds that the concrete nature of the risk she faces from disclosure counsels in favor of permitting her to proceed pseudonymously.  The other Plaintiffs stand on less firm ground, with only one or two factors supporting pseudonymity for each.  Although A. Doe has made out a possible threat of retaliation in Russia, it does not outweigh the heightened public interest implicated here.  Nor do the minor privacy interests raised by several remaining Plaintiffs overcome the default presumption of openness in litigation.

**III.     Conclusion**

For the foregoing reasons, the Court will grant the Motion as to M. Doe and deny it as to all other Plaintiffs.

The Court accordingly ORDERS that:

1.  Plaintiffs' [9] Revised Motion to Proceed Under Pseudonym is GRANTED as to M. Doe, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;

2.  M. Doe shall use the pseudonym listed in the Complaint in all documents filed in this action;

3.  Plaintiffs' [9] Revised Motion to Proceed Under Pseudonym is DENIED as to all other Plaintiffs;

4.  Within fourteen days of this Order, Plaintiffs shall file a Notice advising the Clerk of the Court whether they wish to proceed with filing their Complaint on the public docket using the pseudonym for M. Doe and real names for all other Plaintiffs.  If so, they shall also file their [9] Revised Motion on the public docket as an exhibit to the Notice;

5.  If Plaintiffs do not file such Notice within fourteen days, the Clerk is directed to terminate the case.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  May 27, 2026

9